JUAN HERNÁNDEZ NIEVES and LAURA MATOS DE HERNÁNDEZ, Plaintiffs and Appellants, *v.* RAMÓN ANTONIO FOURNIER, Defendant and Appellee.

No. 10689. Submitted May 1, 1957.—Decided June 26, 1957.

*Edelmiro Martínez Rivera* for appellants. *F. Fernández Cuyar* for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

The basic question raised in this case is the following: In an action for mental and moral damages personally suffered by the claimants as a result of the unlawful death of their daughter who was of legal age, is it essential to allege that the plaintiffs' parents are the *sole* heirs or that they were the *sole* persons who depended on the victim? The lower court so held applying the doctrine laid down in the cases of *Méndez* v. *Serracante*, 53 P.R.R. 807 (1938), and *Soto* v. *Lucchetti*, 58 P.R.R. 715 (1941). However, we believe that such legal doctrine is inconsistent with the provisions of § 1802 of our Civil Code (1930 ed.), 31 L.P.R.A. § 5141, and besides, that it was implicitly discarded by our subsequent decisions in *Travieso* v. *Del Toro*, 74 P.R.R. 940 (1953), and *Vázquez* v. *People*, 76 P.R.R. 556 (1954).

Let us examine the facts. A complaint was filed in the lower court claiming compensation for the unlawful death of Iris Nereida Hernández Matos based on the following allegations: "(1) Plaintiffs file the present action in their capacity and condition of legitimate parents of Iris Nereida Hernández Matos; (2) On September 7, 1950, the defendant, Ramón Antonio Fournier, voluntarily and through the use of force and violence strangled plaintiffs' daughter, said Iris Nereida Hernández Matos, secretly burying the body in a clandestine grave at Fournier Cemetery in Isla Verde; (3) On the aforementioned date Iris Nereida Hernández

Matos was only 23 years old, was in good health and together with her daughter Iris Rosa Fournier Hernández, born of her marriage to the defendant, lived with the plaintiffs at their home in Santurce, Puerto Rico, sharing with them her love and affection and giving them spiritual, material and financial aid; (4) On account of the death of Iris Nereida Hernández Matos, caused by the defendant as claimed, the plaintiffs have suffered deep mental anguish and physical and moral pain, having been deprived of the company, affection and love of their daughter for the rest of their lives and of all the material and moral aid which she gave them and they had to incur expenses and disbursements for her funeral." The defendant moved for dismissal alleging that the aforesaid complaint " . . . does not state facts justifying the granting of any relief to plaintiffs." The lower court stated that " . . . Although the parents who receive support from a legitimate child are entitled to claim damages for its death when it is the result of the fault or negligence of a third party, . . . in the complaint filed to this effect they must allege, besides their condition as heirs or dependents, that they are the only heirs or dependents of the dead child. These averments are lacking in the complaint herein and, therefore, the motion to dismiss will be sustained. . .". Plaintiffs were granted a term to file an amended complaint. Since they alleged that their complaint was not susceptible of amendment, the lower court entered final judgment dismissing the action. See 32 L.P.R.A. § 1281; *Quilinchini* v. *Public Service Commission*, 63 P.R.R. 654 (1944). *Cf. Rodríguez* v. *Municipal Court; Ramos, Int.*, 74 P.R.R. 616, 624–26 (1953). Plaintiffs filed the present appeal.

 The starting point in this case is the rule that a claim for damages for death stems from § 1802 of our Civil Code. See *Orta* v. *P. R. Ry. Lt. & P. Co.*, 36 P.R.R. 668 (1927); *Ruberté* v. *Am. R. R.Co.*, 52 P.R.R. 457 (1938); *Díaz* v. *Water Resources Authority*, 71 P.R.R. 872 (1950);

*Travieso* v. *Del Toro*, 74 P.R.R. 940 (1953); *Vázquez* v. *People*, 76 P.R.R. 556 (1954); *Fournier* v. *Fournier*, 78 P.R.R. 411 (1955). According to the section in question, which establishes one of the fundamental principles of our jurisprudence—that of the Aquilian liability for personal acts—all damage, whether material or moral, gives rise to reparation if three requirements or elements are met: *first*, proof of the reality of the damage suffered; *second*, a causal relation between the damage and the action or omission of another person; and *third*, said act or omission is negligent or wrongful. 4 Castán, *Derecho Civil Español* (8th ed., 1956) 814 *et seq.;* Puig Peña, *Tratado de Derecho Civil Español*, Tome IV, Vol. 2 (1951) 537 *et seq.;* 2 Díaz Pairó, *Teoría General de las Obligaciones* (3rd ed., 1954) 51 *et seq.*, Borrell, *Responsabilidades Derivadas de la Culpa Extra-contractual Civil* (1942) 60–76, 157–77. That precept " . . . does not admit a limitation or exception of any kind; and consequently, the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong, that the victim be delivered from the effects of the damage suffered." Borrell, *op. cit.*, 169. Thus, the manner how damage is caused is immaterial. And, by the same token, material as well as purely moral damages are recoverable in our jurisprudence. See *Rivera* v. *Rossi*, 64 P.R.R. 683 (1945); *Muriel* v. *Suazo*, 72 P.R.R. 348 (1951); *Vázquez* v. *People*, 76 P.R.R. 556 (1954).

It seems unquestionable that the damage caused by the death of a person often reflects on other persons, irrespective of the suffering that the mortal injury is inflicted on the original victim.[1] Those whose needs were supplied by the

---

[1] We need not decide now whether the right of action for death may be transmitted to his heirs. In *Travieso* v. *Del Toro*, 74 P.R.R. 940, 946–47 (1953) (by way of dictum) we adopted the doctrine that said cause of action is the ancestor's own personal right which is abated by his death. The Supreme Court of Spain has followed the same criterion in the judgments of December 20, 1930 (197 *Jurisprudencia Civil* 612) and April 8, 1936 (224 *Jurisprudencia Civil* 80). In case of sudden

deceased suffer damages of a patrimonial nature, as well as those who actually and effectively did not receive support from him but were entitled to receive it and, consequently, lose the well-founded and reasonable expectancy of such future benefits. On the other hand, the persons related to the deceased by blood ties or by affection and love also suffer moral damage. It matters little whether it is the case of a single tortious act. The material and moral damage caused by the unlawful death of a human being may affect several persons, and in such case each one of them acquires an independent action against the person causing the unlawful death, for the source of responsibility is precisely the particular and personal damage suffered by each one of the plaintiffs. Thus, that such claims do not stem from a hereditary right: each plaintiff claims compensation for the damage which the death personally caused him and he is not acting as an heir, even if he is so, since he is not claiming compensation for the damages suffered by the deceased.

---

death it is also adduced that the deceased never got to possess, even for an instant, the right to compensation so that this right never became a part of the hereditary estate nor was transmitted to the heirs. See Borrell, *op. cit.*, 262–64. Recently, in the judgment of February 17, 1956 (40 *Rev. de Derecho Privado* 485–87), the Supreme Court of Spain pointed out: (*a*) that certain damages of a patrimonial nature such as the burial and funeral expenses are hereditary burdens under the Civil Code and, therefore, give rise to an action for damages in favor of the heirs; (*b*) that other material damages, not in the case of sudden death, such as hospital and medicine expenses, impediment for work, etc., are actionable in favor of the ancestor which right may be transmitted to his successors in interest and finally (*c*) that as to the moral damage for the pains suffered by the victim it is still a question even under the Spanish legal doctrine, whether the proper action is transferable to the heirs, especially in case of sudden death. In favor of the transmissibility in all cases, see 6 Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* (Sp. Trans., 1936) 896–97; Mazeaud y Mazeaud, *Traité Theorique et Pratique de la Responsabilité Civile* (4th ed. 1949) 750–72; 2 Savatier, *Traité de la Responsabilité Civile* (2d ed. 1951) 108–26; 2 Mazeaud, *Lecons de Droit Civil* (1956) 546–52. Against it, 2 Ripert and Boulanguer, *Traité Elementaire de Droit Civil de Planiol* (2d ed., 1947) 346–47. *Cf.* García Martínez, *¿Debe reconocerse la acción hereditaria por muerte ilegal?* 15 *Revista del Colegio de Abogados de Puerto Rico* 319 (1955).

Thus, our jurisprudence admits that the next of kin of the victim are entitled to compensation for the material and moral damages which they personally suffered, whether or not they are heirs of the deceased. In *Ruberté* v. *Am. R. R. Co., supra,* we held that the father of the deceased was entitled to compensation for the damages he personally suffered even if the only heirs of the victim were his legitimate children, stating " . . . it makes no difference whether Pablo Ruberté (the plaintiff) was or was not an heir." Subsequently, in *Travieso* v. *Del Toro,* 74 P.R.R. 940 (1953), we held that " . . . technically he (the plaintiff) need not be an heir, it being enough if he is the father of the victim, . . . and that he has suffered damages due to his condition and relation as parent, considering the destruction of his actual or potential right to receive support and the permanent suspension of the prospective benefits that he might have received from his son." We also stated in that case that the father was entitled to compensation for the moral damages which the death of his son caused him, notwithstanding the fact that the deceased left a natural acknowledged daughter who was his only heir under a will which he executed, for " . . . we are dealing with a personal right and not a hereditary right . . .". Besides, in *Vázquez* v. *People,* 76 P.R.R. 556 (1954), we recognized the right of the brothers and sisters of the deceased to obtain compensation for the moral damages which they personally suffered, without need to establish pecuniary damages, stating that said action " . . . is not part of the hereditary patrimony of the ancestor, but that it is a cause of personal action of all those persons who suffer damages as a result of another person's death." In the same way the Spanish jurisprudence establishes that the next of kin of the deceased need not invoke, and much less justify, their status of heirs in order to claim compensation for the moral and material damages caused to them. See, among others, the judgments of December 20, 1930 (197 *Jur. Civ.* 712), of April 27, 1953

(42 *Jur. Civ.*, 2d s., 752), and of February 17, 1956 (40 *Revista de Derecho Privado* 485–87). And the doctrine sustains the same criterion: Borrell, *op. cit.*, 261–64; Colombo, *Culpa Aquiliana* (1944) 708 *et seq.;* Colin y Capitant, *Curso Elemental de Derecho Civil* (3d Sp. ed. 1951) 831 *et seq.;* 2 Mazeaud y Mazeaud, *op. cit.* 700–706; 2 Savatier, *op. cit.* 108 *et seq.;* 2 Ripert and Boulanger, *op. cit.* 345 *et seq.;* 2 Mazeaud, *Lecons de Droit Civil* (1956) 546 *et seq.;* 6 Planiol and Ripert, *Traité Pratique de Droit Civil Francais* (2d ed., 1952) 753 *et seq.*

▇▇▇ On the basis of the principles set forth, the solution of the problem raised in the instant case would be conclusive were it not for the great confusion introduced in our law by § 61 of the Code of Civil Procedure. 32 L.P.R.A. § 311.[2] In effect, the source of liability is the particular

---

[2] It was copied from the Code of Civil Procedure of California (West's Ann. Cal. Codes, Civil Procedure, Vol. 14, § 377) and is a counterpart of paragraph *k* of Rule 17 of the Rules of Civil Procedure. (32 L.P.R.A. App., R. 17 *k*). It provides the following:

"When the death of a person not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

We have often pointed out that it was unnecessary to adopt said section in Puerto Rico because our law has never recognized the rule that the action for damages is abated by the death of the victim. And our case law clearly shows the difficulties brought about by the co-existence of § 1802 of the Civil Code and § 61 of the Code of Civil Procedure. See, among others, *Rosado* v. *Ponce Ry. & Light Co.*, 20 P.R.R. 528 (1914); *Díaz* v. *P. R. Railway, Light & Power Co.*, 21 P.R.R. 73 (1914); *Colón et al.* v. *P. R. Ry., Lt. & Power Co.*, 26 P.R.R. 237 (1918); *Rivera* v. *Reyes*, 31 P.R.R. 420 (1923); *Arreche et al.* v. *P. R. Ry., Lt. & P. Co.*, 31 P.R.R. 424 (1923); *Maldonado* v. *Hamilton*, 32 P.R.R. 208 (1923); *Torres* v. *Am. R. R. Co. et al.*, 34 P.R.R. 661 (1925); *Silva* v. *Carbonell*, 35 P.R.R. 224 (1926); *Carbou Rodríguez* v. *Mir*, 36 P.R.R. 728 (1927); *Heirs of Peraza* v. *Marín*, 40 P.R.R. 341 (1929); *Pérez* v. *Succrs. of M. Pérez & Co.*, 41 P.R.R. 844 (1931); *López* v. *Am. R. R. Co. of P. R.*, 50 P.R.R. 1 (1936); *Ruberté* v. *Am. R. R. Co.*, 52 P.R.R. 457 (1938); *Méndez* v. *Serracante*, 53 P.R.R. 807 (1938); *Rodríguez* v. *Ell Tee, Inc.*, 57 P.R.R. 930 (1941); *López* v. *Rexach*, 58 P.R.R. 145 (1941);

and personal damage suffered by each one of the deceased's next of kin, and not a hereditary right. Therefore, there cannot exist any kind of solidarity between the different actions arising against the person causing the unlawful death: Each action for compensation refers to a different and separate damage even where initially the tortious act only causes the death of one person. Strictly speaking, the situation cannot be distinguished from one where the initial fault causes direct damage to several persons. For example, if in an accident due to the fault or negligence of the driver of the vehicle several passengers suffer serious injuries, no one would doubt that each one of them has an action entirely independent of the action which the others may file.

However, parting from the wrong premise that the action for wrongful death is always of a hereditary nature (according to the provisions of the aforesaid § 61 of the Code of

---

*Rivera* v. *Olabarrieta,* 58 P.R.R. 436 (1941); *Soto* v. *Lucchetti,* 58 P.R.R. 715 (1941); *Roses* v. *Juliá,* 67 P.R.R. 485 (1947).

The confusion is even greater in the case of the damages as a result of the death of a minor. In that case, the provisions of § 60 of the Code of Civil Procedure and of Rule 17(*j*) must be reconciled with the principles of the Civil Code. It has been said that the action only corresponds to the persons listed under § 60. On the other hand, we have also stated that the cause of action exists "in favor of the conjugal partnership." See *Izquierdo* v. *Andrade,* 44 P.R.R. 706 (1933); *Jorge* v. *Umpierre,* 49 P.R.R. 75 (1935); *Parrilla* v. *Loíza Sugar Co.,* 52 P.R.R. 232 (1937); *Ramos* v. *Sucesión J. Serrallés,* 51 P.R.R. 332 (1937); *Castro* v. *González,* 58 P.R.R. 369 (1941); *Suárez* v. *Saavedra,* 60 P.R.R. 589 (1942); *Asencio* v. *Am. Railroad Co.,* 66 P.R.R. 218 (1946); *Vargas* v. *Alers,* 69 P.R.R. 215 (1948). Besides, such provisions apply not only in case of death but also where a minor suffer injuries through fault of another. And if the minor does not die there also arises an action in his favor. See *Rivera* v. *Reyes,* 31 P.R.R. 420 (1923); *Cabrera* v. *Boscio,* 38 P.R.R. 282 (1928); *Acha* v. *Nevárez,* 59 P.R.R. 235 (1941); *Carrasquillo* v. *Am. Missionary Association,* 61 P.R.R. 837 (1943). Finally, we must bear in mind the proviso of § 60 to the effect that nothing provided therein "shall be construed as a violation of the rights of inheritance established by the Civil Code and of the actions originating therefrom." Since the case at bar does not involve § 60 or Rule 17(*j*) we will not express any opinion now concerning these problems. Cf. *Cedeño* v. *Tropical City Industries, Inc.,* 71 P.R.R. 586 (1950); *Díaz* v. *Water Resources Authority,* 71 P.R.R. 872 (1950); *Fournier* v. *Fournier,* 78 P.R.R. 411 (1955).

Civil Procedure), we held in *Carbou Rodríguez* v. *Mir*, 36 P.R.R. 728 (1927), that ". . . the action should be brought jointly by all the heirs or by only one in behalf of all". This rule was ratified in *Méndez* v. *Serracante*, 53 P.R.R. 807 (1938), stating that ". . . when the heirs sue, one must do so on behalf of all or all must join as plaintiffs, and if one should refuse to join the others, he must be made a defendant and the reason thereof must be stated in the complaint in accordance with the provisions of section 66 of the same code [Code of Civil Procedure]. The point is that the action contemplated by the statute is a single action, and also that the judgment which may be entered in favor of the heirs for the full value of the lost life, must be a single judgment." In *Soto* v. *Lucchetti*, 58 P.R.R. 715 (1941) such rule was extended to actions for wrongful death where the plaintiffs based their right to compensation exclusively on the loss of support and they did not claim to be heirs of the deceased. There we held that ". . . two separate actions do not lie in this case but instead one joint action should be brought, and that the complaint in said action should allege not only the condition of heirship or dependency but also that the plaintiffs are the sole heirs or dependents of the deceased." See also *Rodríguez* v. *Ell Tee, Inc.*, 57 P.R.R. 930, 936–37 (1941); *Rivera* v. *Olabarrieta*, 58 P.R.R. 436, 448–49 (1941); *Cordero, Mgr.* v. *American Railroad Co.*, 66 P.R.R. 438, 441, 443 (1946); *Roses* v. *Juliá*, 67 P.R.R. 485 (1947); *Acosta* v. *Crespo*, 70 P.R.R. 223, 244 (1949).

The only way to maintain jurisprudential doctrine would be by holding that § 61 of the Code of Civil Procedure and Rule 17 (*k*) limit or restrict the scope of § 1802. For the reasons stated in the case of *Travieso* v. *Del Toro, supra*, —and which we need not repeat here—we cannot accept that conclusion. There we stated that the procedural provisions in question do not refer to "heirs" in the technical sense of that concept but to the group of persons who by virtue of

their relations with the victim have presumptively or probably suffered damages. See, also, *Vázquez* v. *People, supra.* Already in *Orta* v. *Porto Rico Railway, Lt. & P. Co., supra,* at pp. 668, 678, 680, referring to §§ 60 and 61 of the Code of Civil Procedure, we had cautioned: ". . . may perhaps give causes of action to persons who previously did not have them and prevent others from exercising similar actions. We find nothing in these sections to show that the Legislature thought that it was creating an action for the first time. On the contrary, the Legislature must have known of the existence of section 1803 of the Civil Code, and did not seek to repeal or impair it." [3] In any event, when plaintiffs, as here, claim only the damages which they personally suffered as the result of the wrongful death and do not claim compensation for the damages suffered by the victim, they are obviously not acting as "heirs". That alone suffices to render inapposite the provisions of Rule 17 (*k*) and § 61 of the Code of Civil Procedure. And since the action for damages then depends exclusively on the provisions of § 1802 of the Civil Code, there is no juridical basis whatever for holding that there only exists a common cause of action in favor of all the persons who by reflection have suffered material or moral damages on account of the wrongful death.

██ In order to prevent an endless number of persons from bringing an action as a result of a single tortious act which causes the death of another person, the court need

---

[3] Notwithstanding what was stated in the *Travieso* case, *supra,* perhaps the principles of our substantive law might be better reconciled with the procedural rules of the aforecited § 61, if we adopted the theory that there is an action for recovery of the damages caused by the mortal injury to the initial victim, which is transmitted and belongs to his heirs in the same way as if it were part of the property belonging to the patrimony of the deceased. That would explain why § 61 grants an action of damages to the heirs of the deceased. All of it in addition to the compensation granted by § 1802 for the personal damages suffered, by reflection, by .other persons affected by the death of the initial victim. But we have already stated that we are not now concerned with that problem and that no pronouncement issues with respect thereto. See footnote 1, *supra.*

merely demand that each plaintiff fully justify the reality of the damages which he claims. Thus, as to the moral damages, it is essential to prove deep moral suffering and anguish, and a passing affliction would not give rise to an action. On the other hand, the number of persons who may bring an action to demand liability is restricted by the requirement that the blood tie with the victim must be established, and by the fact that, as a rule, the material and moral damages only affect the next of kin of the victim. The fear that multiplicity of suits may arise is no reason for denying the compensation for damages. *Cf. Rivera* v. *Rossi, supra,* at pp. 683, 690–91; *Travieso* v. *Del Toro, supra; Vázquez* v. *People, supra.* And we could not deprive the plaintiffs of compensation for the loss which the death of their daughter personally caused them without committing an injustice and without violating, besides, the juridical precept sanctioned by § 1802: all damage suffered by another's fault gives rise to reparation.

The judgment will be reversed and the case remanded to the Superior Court for further proceedings consistent with this opinion.

Mr. Justice Marrero and Mr. Justice Pérez Pimentel did not take part in the case.